Tilghman, C. J.
This action is brought by Christian Becker, the defendant in error against Matthias Ranck and Henry Share, in the Court of Common Pleas of Lancaster county. The court entered a rule of reference under the act of assembly. The rule was taken out against both defendants, but it does not appear that it was served on any other than Ranck, who attended, and took part in the choice of arbitrators. Neither does it appear that Share, had any notice of the appointment, or meeting, of the arbitrators, or attended their meeting. An award was made against both defendants and judgment entered accordingly. After the entry of the judgmant, Share, in order to gain a stay of Execution, gave security for the payment of debt and costs, according to the act of the 21st March, 1806. On this state of facts, two questions arise, 1st. Was there error in entering judgment against them? 2d. Did he, by giving security for debt and costs, waive his right to bring a writ of error?
1. On the first point, I think there can be no doubt. The object of a rule of referees is, to remove the cause from the Court of Common Pleas, and carry it before another tribunal, consisting of arbitrators, to be chosen by the parties. The choice of these arbitrators, is a matter in which, both defendants were equally interested, and there is as much reason, for serving notice on both, as there was, for serving the original writ on both. And so it has been expressly decided. In Berentz, &c. v. Bishop, (5 Serg. & Rawle, *416 179,) the plaintiff, having entered a rule of reference, against two defendants, served notice on one only, and obtained an award and judgment, against that one. This was held to be error, because, having commenced a joint action against two, on both of whom the writ was served, the plaintiff could not drop one of them, and go on against the other. In Pedan’s Ex. v. Cox, &c. (3 Serg. & Rawle, 245,) the plaintiff, having brought suit against two executors, entered a rule of reference against both, but served the rule, on one only. An award and judgment, were obtaind against both, and this was held to be error. It is necessary also, that service of the notice, should appear on the record, as was decided in the case of Oppenheimer v. Comley, (3 Serg. & Rawle, 3.) Now in the present case, there is no mention on the record, of any service of the rule of reference on Share, or any appearance by him, or part taken, in the subsequent proceedings. It was error therefore, to enter judgment against him,. But it has been contended, that granting there was error, Share precluded himself from taking any advantage of it, by entering security, for the payment of'debt and costs, and this is the second question for consideration.
2. I grant, that this court, will enforce the agreement of a defendant, not to prosecute a writ of error. And if any such agreement, either express, or fairly to be implied, could be shown in this case, I should be for quashing his writ. Let us see then what he has done — no express agreement, is pretended. But' he gave security for payment of debt and costs. What was his inducement for doing this? Did he ask, or receive, any indulgence from the plaintiff, as a consideration for his relinquishing his right, to a writ of error? I confess, I cannot perceive that he did, and therefore, can see no ground, for presuming a relinquishment. If the defendant is a freeholder, he is entitled, by our law, to a stay of execution, of course. But if not -a freeholder, he can only obtain a stay, by entering security for the amount of debt and costs. (Act of the March, 1806, 4, Sm. L. 329. sect. 7.) On giving this security, the stay of execution is matter of right. • He does not ask it of the pfaintiff; he is under no obligation to him for it. It is a privilege conferred on him by law. How then can we imply, the waiver of another privilege, not inconsistent with a stay of execution, or with the security which has been entered? I mean, the privilege of bringing a writ of error. The act of assembly, which gives the stay of execution,' does not enjoin the waiver of a writ of error as a condition; which it certainly ought to have done, had it been so intended: and it appears to me, that to imply a waiver, where the plaintiff was under no obligation to make it, would be treating him very unjustly. At the timé of his entering security for debt and costs, he may not have known that there was any error in the judgment; or, if he was in doubt on that subject, why might he not in the first place, avoid the pressure of an immediate execution, by availing himself, of a stay, which the law *417 had granted him, on certain terms, in order to procure time for 'mature reflection, whether it would be advisable to bring a writ of error or not. Upon an attentive consideration of this matter, I have not been able to find ground for an inference, that the writ of error was waived'by the defendant’s entering security for the purpose of obtaining a stay of execution. This court should exercise great caution in laying its hands on writs of error, where they have not been waived by plain agreement, express or implied, or where the plaintiff in error, has not been guilty of some fraud or trick, to the prejudice of the defendant; nevertheless, if the point, now before us had been decided, I should not be for disturbing it. " But it certainly never has received a direct decision, in this court, and so far as the opinions of the judges may be conjectured, from what has fallen from them indirectly, they .seem to be unfavourable to the defendant in error. In the case of Gibbs v. Alberti, (4 Yeates, 373,) . the question was, whether a judgment, by a justice of the peace, from which the defendant had appealed to the Common Pleas, had been regularly entered. In that ease, the defendant, being a freeholder, had availed himself of the privilege of the law, and obtained a stay of execution, without entering security. The judgment was entered by default, and Brackenridge, justice, was of opinion that, the demand of a stay of execution, was equivalent to an appearance by the defendant, and cured an irregularity in the entry of the judgment. But neither of the other judges, (Mr. Yeates and myself,) concurred in that opinion. Mr. Yeates thought, that the judgment was erroneous, and should be reversed, which plainly shows his opinion, that the demand of a stay of execution was no waiver of an appeal, or writ of error. My opinion was, that the judgment was regular, for reasons of no importance in the present question. I therefore concui’red with Mr. Beacken-bibge, that the judgment should be affirmed, but avoided any expression of concurrence as to the effect of demanding a stay of execution. In the case of Oppenheimer v. Comley, (3 Serg. & Rawle, 3,) it was decided by this court, that the appointment of arbitrators ex parte, was bad, unless it appeared on the record, that the absent party had been served with notice. In that case, the plaintiff in error (who had been defendant below) had obtained a stay of execution by giving security for debt and costs, and the point now made by the defendant in error, if tenable, would have been decisive. But it was not mentioned, or even hinted at, by the counsel in their arguments, or the court in their opinion. It is to be presumed, therefore, that it was not thought to be tenable. Considering myself then, as at liberty to exercise my own reason, un-tramelled by authority, I am of opinion, that there was error in this judgment, that the right of prosecuting a writ of error has not been waived, and consequently that the judgment should be reversed.
*418 Duncan, J.
In all civil actions every man has a right, ex debito justifies, to have his cause reviewed by a court of error. But sacred as this light is, courts of error possess an inherent power to prevent its abuse. Where it is demonstrable that a writ of error is taken out for the purpose of delay, or used against good faith, to suffer the supervising power of the court to be thus misused, would be a reflection on courts of justice, who, instead of being the guides and guardians of j'ustiee, would be made the instruments of litigation, delay, injustice, and oppression.
There is, in all legal proceedings, a seasonable proper time to make objections. The present objection, if tenable, should have been made the first opportunity, by which some expense and great delay would have been saved, and the debt ultimately secured. The most mischievous and unjust consequences would result, if it were allowed to a party to keep back his preliminary objections, take all the advantage of the indulgence of the law, and after a long acquiescence and an admission on record of the validity of the proceedings, revive these dormant pretences.
It ought never to be admitted to a party to increase the expense of litigation, by proceeding in a suit where he knows he has an objection in limine to the proceedings. He shall not be permitted obstinately and perversely to keep that in reserve, to lead his adversary into a train of useless expense by dilatory steps, by treating his cause as if in court, and by delaying the execution of his judgment; by giving absolute security for payment at the end of a year; and after that stay has been obtained, and he has obtained still further delay by imparling with the plaintiff, and still further indulgence by repeated promises of payment; and when all this legal delay has been obtained, and the plaintiff’s patience is at last exhausted by repeated broken promises of payment, and he is about to receive the fruit of his judgment, if the laws should suffer such-defendant to spring upon him with this covert objection, and turn him round to their first claim, they would justify all the reproach that has been heaped on the law’s delay. But this reproach is not merited, for the law will not endure this. When I made the suggestion, it was received as a marvellous novelty — a thing unheard of in the law — justified by no principle, and at variance with all practice. Now, it appeared to me quite a familiar principle, (for indeed it is a rudiment of the science of the law,) that a party may slip his time, or by certain acts of record waive all preliminary objections, as to the institution of the suit, or the mode of appointment of the arbitrators; for it is a rule in pleading, that when you ask a favour and gain time, you admit ail before to be right. Grant v. Lord Sondes, 2 W. Black. Rep. 1096, Pleas in abatement as to the jurisdiction, are all of this nature. If not made in the first stage of the cause, they are lost for ever; after pleading in chief, it is too late to object to the jurisdiction of the court.. • So, if one omits to plead a misnomer, he may be taken in *419 execution by a wrong name; so defendant is estopped by a recognizance of bail entered into in the name by which he is sued, from pleading misnomer, though he is himself no party to the recognizance; for bail is an appearance as well as security. Stroud v. Gerrard, 2 Salk. 8. Smith v. Smith, Willes, 461. The plaintiff in error had an opportunity, by motion to the Court of Common Pleas, and if a party waives that privilege and submits to the suit, he is bound to the jurisdiction. Carthew, 33. But the doctrine, of waiver is still more applicable, and our own decisions afford strong instances of its effect. Appeals from justices of the peace, though irregularly entered, — entered out of time, when the right of appeal was gone, — entered without bail; all these are waived by the slightest act of the appellee admitting the cause to be in court — as, declaring, taking a rule to plead, pleading, entering a rule to take depositions; any act, however minute, acknowledging the party to be in court: so in a case more like — appeals from awards of arbitrators. These acts waive all such irregularities, and validate that which was erroneous. With respect to writs of error, evidently brought for the purpose of delay, courts will not stay the proceedings pending a writ of error, as, where taken out after the defendant’s attorney had undertaken to pay, if the plaintiff would give time, which was agreed to, provided no delay was intended on the other side: this has been held a good reason for quashing a writ, as having been issued against good faith. 1 Sell. Pr. 545. 2 Saund. 101. Note H. And this court, in Parks v. Alexander, at Sunbury, quashed a writ of error, as being issued against good faith. So, where defendant obtained an order to stay proceedings, on payment of debt and costs, it is very much questioned whether he ought to be allowed to plead aity thing, because a plea of any sort would be a fraud of the rule. In Thompson v. White, 4 Serg. & Rawle, 135, it was decided that the entry of the rule and appointment of arbitrators, may be inquired into by the court in which the action was pending; because where the.jurisdiction never existed in the arbitrators, the proceedings are void and the jurisdiction not trans-ferrable to the arbitrators. The Chief Justice emphatically said, “ A writ of error will lie on the award of arbitrators, for errors appearing on the face of the proceedings; but some things are to be done before the jurisdiction attaches, and these the Court of Common Pleas may inquire into, such as the entry of the rule appointing the arbitrators, and- this may be inquired into by the court where the action was pending, because where the jurisdiction never vested in the arbitrators, the proceedings are void, and the jurisdiction not taken away; but where the jurisdiction attached, the cause is out of court, and the court cannot afterwards make inquiry into the proceedings before the arbitrators.. Thus, where the award is entered, and not appealed from within twenty days, it is considered as a record of the court, and error will lie on it. Should it appear that the arbitrators exceeded their jurisdiction, or that *420 the award was contrary to law, it would be subject to revision.” The most natural course, where an irregularity in the appointment of arbitrators is alleged, is an application to the Court of Coinmon Pleas, who would hear it on motion and affidavit, and the matter might be explained. As here that Ranch acted as the agent of Share, or that both appeared before the arbitrators, which would set all right. ( Without saying that this court could not reverse for the irregularity, still I think it is the most proper course, I must say, that after acquiescence, confirmation, ratification of the award, and giving security for the sum awarded, this court ought .not to interpose on the ground of this irregularity, as, if there was irregularity, it was waived by a most solemn act of record. In Gelston v. Hoyt, 13 Johns. 501, 576, the court refused to suffer a party in a writ of error to discuss and consider matters not brought before the court below, or which were abandoned by the parties, for that would bo in fact assuming original jurisdiction.
The proofs here were satisfactory: the record shows that delay was obtained, and the record shows that repeated indulgences were solicited and obtained; an agreement to wait for the principal, if the interest was paid; to stay the execution beyond the year, which was done. The error assigned has no relation to merits, and, for my own part, the justice of the court seemed to me to require them to quash the writ of error. The effect of the delay, and the acts of the party acknowledging the validity of the judgment, if their objection were now to be listened to, would be, that the creditor is thereby defrauded of his debt. For it has been stated, that it is not taken out for the benefit of the debtors themselves, but to let in some favourite creditor, whose judgment will be made way for, if this one is removed, to come in on the proceeds of Share’s lands sold on execution, and from which sale the creditor has received from the sheriff, this debt. I am not at all moved by the consideration, that Share is alleged to be the security only of Ranch; it does not make Share’s case more favourable; it ought not to affect Ranch; for his conduct shows that he would not part with his money on the credit of Ranch. But on the motion to quash the writ the other members of the court disagreed with me, and desired this motion, and the main question, on the errors assigned, to be argued together; and they differ from me on the main question. I have not heard any thing to remove my first impression: it stands now confirmed. I stated it, to give the counsel of the plaintiffs in error an opportunity to remove it. 1 had not prejudicated the matter: I have listened to him with attention and pleasure, as I always do; but the argument, able as it was, and animated in an unusual degree, has wrought no change in my preconceived notions. If any thing could shake the confidence I have in this opinion, it is the just respect I owe and always pay to the opinion of my brethren. But candour obliges me to say, on this occasion, my confidence remains unshaken; though, when I state this, I cannot but *421 recollect, and it is with infinite respect, that I am differing in opinion with those whose opinions are so much superior to mine. From the course which the argument has taken, justice to myself requires me to state, at some length, my reasons for withholding my assent to the recovery of this judgment; and if I am acting under misconception of the law and a misguided judgment, it becomes mo at least to show that there exist at least some plausible reasons for the opinion I deliver, while it must now be considered they are not solid.
And the error assigned is, “that notice to appoint the arbitrators was served on Ranch alone, and he alone attended with the prothonotary when the arbitrators were appointed; and yet the award and judgment are against both.” I admit that the service of the rule could not justify an award against both, because no jurisdiction had attached in the arbitrators. But this is not the whole case; for if Share, having notice of the meeting of the arbitrators, was in Lancaster on the day they met, — called on the plaintiffs’ attorney, — declared he would not attend, as there was no defence; and when, after the report returned to the prothono-tary’s office, and judgment was entered on it, the obliges demanded the stay of execution on that judgment, agreeably to the act of the 21st of March, 1806, to regulate arbitrations and proceedings in courts of justice, and gave the security for the debt required by that law, and did in consequence obtain the stay for one year; and as this was the uncontradicted case, my opinion is, that the defective service cannot now be taken advantage of on a writ of error. The plaintiffs in error had several alternatives, either to appeal or to give bail to prosecute the appeal, or move the Court of Common Pleas to set aside the award and judgment, or take out a writ of error, and give bail in error, or give security absolute for payment of debt and costs; and they chose the latter alternative, of submitting to the judgment, giving security for the payment of the judgment, and obtaining delay for one year; on this state of the'record they are precluded from denying the jurisdiction of the arbitrators, and estopped from contesting the judgment on the ground of want of notice. Appearance always cures the want of notice: here there is an appearance recognizing the authority of the arbitrators, and relieving that error. 1 confine myself at present to this exception; I abstain from all opinion except on the immediate point in judgment. They are estopped to deny the jurisdiction of the arbitrators; they shall not be permitted to aver, that themselves and their cause were not before the arbitrators, and decided on by them, because they confess of record, by the most absolute ratification, their authority. They have entered into a solemn contract with the court and with the party, for which they have received a consideration: “ Stay your execution for one year, and I will let this judgment §tand and absolutely *422 secure your debt.” The court accepts the security, and the law gives the delay; they have obtained the benefit of the most extraordinary indulgence on the prescribed terms. It is against all my sense of propriety, of justice, and of reason, as well as against the rules of law, for them now to say, all this is a mere nullity, I had not notice of the time of appointing the arbitrators, I withdraw from this engagement, I dissolve this security; true, I had knowledge of this objection, true, I waived it; by waiving it I have gained time, I obtained a favour: and wherever a favour is asked and time gained, this, as I have already showed by authority, is an admission that all before is right. This neglect to apply for redress in the first instance, will cure, as well in courts of law as in courts of chancery,,all irregularity of practice and defective notice. 3 Johns. Ch. 191. Such objections are abandoned by the parties. 13 Johns. 561, 576. What is the nature of this security ? It certainly has no relation to, nor dependence on, the affirmance or reversal of the judgment. Does the bringing a writ of error and giving bail in error dissolve it ? They are recognizances of a different nature, for different purposes; one to obtain the stay of execution on a judgment acknowledged to be just, the other to reverse a judgment alleged to be erroneous, conditioned only for payment, if judgment be reversed. These recognizances are inconsistent. If the judgment be reversed, would the stay bail stand for the sum that might be found due on the second trial? If he is discharged from the first judgment, is he not discharged for ever ? The second recovery was not the sum he was bound to pay. Could the costs, on the affirmance of judgment, be recovered from him? has he entered into stipulations further than to satisfy the first judgment? If affirmed and bail in error prove insolvent, could this security be resorted to ? Does the writ of error with bail suspend only the judgment? Would it reverse with every consequence attached to it, as if the writ of error had not interposed ? If suspended beyond the year, is the security discharged by this prolongation of time, and the bail in error only responsible? The security is not conditional; it is not in the nature of special bail or bail in error. In the first, the body of the principal remains in the custody of the bail; he may discharge himself by surrender of the principal: but, in this case, the security can do nothing until he pays the money. He cannot safely pay during the pendency of the writ of error: thus the time is prolonged against his consent, and to his injury. This is a new obligation, into which he has not entered. On affirmance, do both stay bail and bail in error stand? Can one have contribution against the other ? If the first security continues, why take a new one — double security? Besides all these puzzling inquiries, by the act of the 11th of March, 1804, in certain cases three weeks are allowed after judgment and before execution, to give the party time to take out the writ of *423 error; but, in addition to this, one year would be obtained by this management: these double indulgences are inconsistent. In sustaining this writ of error, anomalies are introduced, consequences tending to a most injurious result; adding to this novel indulgence of the law another innovation, and making that which was intended by the legislature a privilege of exemption for one year from execution, on full security of the debt, an instrument of ruinous delay to the plaintiff, operating frequently to the loss of the debt. This is in direct opposition to the intention of the legislature, which was, while it extended an indulgence to the defendant, amply to secure the plaintiff, taking away the plaintiff’s vested right to proceed by execution immediately on his judgment; but when they did this, they gave him an equivalent — absolute security. If the recognizance were sued out, pending the writ of .error, I am at a loss to know what defence the bail could make; and if the bail would not be discharged by the reversal of that judgment, it would present this most incongruous state — the principal loosed, and the bail bound. Perhaps in no other country is to be found a similar provision in favour of the debtor; a favour so extraordinary as this, stopping the wheels of the law. This would be most unjust, impairing' the obligation of the contract without securing the debt, and I am not for imputing this injustice to the legislature; far from it was their intention, because it is a condition precedent, that unconditional, unqualified, and absolute security for payment at all events shall be given. It was a matter within the knowledge of the defendants; they had an opportunity to move the Court of Common Pleas to set aside the judgment; it is their own laches, which ought not to be relieved against, where the plaintiff cannot be restored to his former situation. There was no pressure of time, no duress, no compulsion; they made the election.
The forthcoming bail, in Virginia, has some resemblance to this procedure; and there it has been held, that a confession of judgment on motion to a forthcoming bail, will operate as a release of errors in an original action. Edmonds v. Green, 1 Randolph, 44. And the reason given will exactly apply: “ Where a party has acknowledged solemnly, that the debt for which he is sued is just, and that he is willing the judgment shall stand, of what, importance is it to him whether the proceedings are regular or irregular, if the judgment is acknowledged to be just?” . The security here was an acknowledgment of the validity of the award, and a recognition of the judgment on it. So, in Yeates v. Russel, 17 Johns. 461, it was determined that if parties to a suit, not referrable under the statute, by their written agreement, expressly consent and agree that a rule of reference be entered, and that a judgment may be entered on a report of referees, all error is amended or taken away by consent, and the judgment as valid as if entered on record. And Chief Justice Kekt, who gave the opinion of the Court of Errors, considered the agreement of the *424 parties, in the progress of the cause, to be highly obligatory, and that courts ought not to suffer them to be violated; and referred to some recent decisions, which determine that if .any party agree no writ of error shall be brought, he is barred by it, though there is manifest error; for to bring it is contrary to good faith: it is contrary, as he said, to justice to permit the defendant to proceed in his writ of error, since he has prevented the plaintiff from pursuing the course of the common law. So, here, the plaintiff in error prevented the creditor, estopped him from proceeding according to the law for one whole year, by giving security for the debt, and agreeing that the judgment should stand. But we have no occasion to resort to the analogies of the common law, or the decisions of other states on their local statutes; for there is a decision of this court on this very point, settling the law as I had supposed, and as one of the judges who decided that case and reported it concluded. Gibbs and Co. v. Alberti, 4 Yeates, 373. Certiorari, which for this purpose is a writ of error: it appeared by the record that a summons issued against the defendant, dated the 28th of July, 1804, to answer plaintiff in a plea of debt, &c.; to which constable returned — summons issued, left at the house of defendant, 30th of July, 1804. Defendant obtained judgment by default, and a stay of execution for nine months, according to the second section of the act of the 29th of March, 1804. Chief Justice Tilghman said, “l will not' presume any thing against the proceedings, or that the summons was issued irregularly, in order to set aside the proceedings. The 30th of July may refer to the day of return. The defendant came before the court in a most unfavourable point of view to obtain relief, after having already obtained a stay of execution for nine months. If the summons had not been regularly issued, he might have appeared notwithstanding, and objected to the service, which the alderman would have set aside, and the plaintiff would have proceeded by new process.” To apply this case, — the plaintiffs in error might have moved the court to set aside the award. If there were no notice of the appointment of arbitrators, yet as Share, who now complains that he did not receive notice to attend at the prothonotary’s office at the nomination, had notice of the meeting of the arbitrators and declined to attend, having no defence to make, and had notice of award, he ought to have moved the Court of Common Pleas to set aside the award, if he intended to complain of the defect; which the court would have done, and the plaintiff would have proceeded on a new rule.
The judgment'by default in Alberti’s case was clearly erroneous. The plaintiffs-in error here did that in a court of record which Alberti did before the alderman, and Beackenkidge, Justice said, “I think the prayer of the nine months’ respite before the alderman was equivalent to an appearance on the day required by the Summons, and pleading to the demand.” So *425 here the entry of security was a full appearance in every stage-of the proceeding. Justice Yeates did not concur, because, the aider-man being dead, he had no other remedy. But we may conclude, if that learned judge had thought he had another remedy, and let it slip, he would not have set aside the judgment; and, from his marginal note to the report of that case, he considered it as settling the principle, that craving the stay of execution after judgment, avoided all error in the service of process. That is his conclusion from the case, and I confess it appears to me to be a conclusion which cannot be resisted.
All that I have now to give an opinion upon, is the error assigned; and that opinion is, that it appears from the record, that the plaintiffs in error waived the irregularity, admitted the jurisdiction of the arbitrators had attached against both; and that by their joint act of record, by giving the security, the appearance, and their voluntary admission of the validity of the judgment; and having, on the faith of these acts, obtained a favour, (a suspension of the execution for one year, at the expense of the defendant in error,) they are estopped from denying the jurisdiction to which they submitted. And, if there were occasion to resort to a legal presumption, that legal presumption would be, that Rancie acted for both, and by the authority of his co-obligor and co-defendant. His subsequent ratification is equivalent to a warrant to Ranch to act as his agent in conducting the action. The law does not require personal attendance: a copy of the rule may be served on the agent or attorney of the party. The second section of the act prescribes the mode of nomination — “ when both parties attend, either by themselves, their agents, or attorneys.” And here I may say, that the action was an amicable one. So far from being adverse in every stage of it, it appears to be one in which there was no defence. The legal delay of execution was all that the plaintiffs in error had in view. The agency may be proved, as well as any other fact: it'is not required that the authority should be in writing or filed of record. The adoption of Rancie's authority was by record proof. The presumption of agency is not a strained one, but a legal one, — de jure in jurem. It was settled in Pedan v. Coxe, 3 Serg. & Rawle, 245, that where there are two defendants, the rule must be served on both, unless one was authorized by the other to conduct the suit for both. What stronger proof of previous authority than confirmation of record ? And in Thompson v. White, 4 Serg. & Rawle, 135, it is decided that the entry of the rule and appointment of arbitrators may be inquired into by the court in which the action is pending, because, where the jurisdiction never existed in the arbitrators, the proceedings are void, and the jurisdiction of the Court of Common Pleas is. not taken away. But by the entry of the security, the jurisdiction was acknowledged, and there could be no error assigned on that ground. I cannot distinguish the award of arbitrators from the *426 verdict of a jury; the act puts them on the same footing. If a verdict had been given, judgment entered on it, security given, stay obtained, that a writ of error should be sustained on account of some irregularity in the process, original or jury process, or mistake in making up the issue, or parties going to trial without issue, or an immaterial issue, or on a joint action, summons served on one, or appearance by attorney for one, and plea for both, verdict and judgment against both, security given by both to obtain the stay and stay obtained, that a writ of error should be brought alleging one only was in court, in person or by attorney, — our reason would not submit to this; yet the principle is the same. The entry of bail to the action is full appearance in court; it may be pleaded as an appearance and used as an estoppel. Stroud v. Gerrard, 1 Salk. 8. The act of giving the security is neither the compulsory act of the court nor his adversary, but his own voluntary act: an act not necessary to give him an opportunity to make the objection; but an act removing all exception. It is a confession of the justice of the award, and the validity of the judgment, from which the party will not appeal to any other tribunal. This confession cannot be set aside, but verdicts may, (Br. Estoppel, 16;) for a man is concluded by his own act of record, which may be by acceptance, taking of continuances, imparlance, or confession. Co. Litt. 352, a. Now, all these occurred: Share did take continuance by praying for the stay of execution; confession, by giving security. I cannot imagine any thing moré powerful, or falling more within the legal policy, which forbids a party from denying that which he had admitted of record. The contract is with the court, the security approved of by the court, the favour granted by the court, time prescribed by the law. And if this judgment is reversed, the plaintiffs in error have, by availing themselves of this extraordinary indulgence, giving the security, suspending all legal process for one year, not only delayed the plaintiff from recovering his just debt, but defeated him altogether.
Indeed when this court, a few weeks since, in their session at Pittsburg, in the ease of Westhook v. Poop, decided that special bail to prosecute an appeal from an award of arbitrators, was discharged by subsequent security, after judgment to obtain a stay of execution, I thought it went far to decide this case; for if the law, as it is now decided, will produce this consequence, that when there is a judgment and final security given, and when the stay is out, a writ of error is taken out, judgment reversed and a venire facias de novo awarded, the plaintiff loses the benefit of his special bail to the action, the bail in the appeal and the final security acknowledged of record for absolute payment.
It is proper not to leave without notice what has been urged by the counsel for the defendant in error, as to the effect of the reversal of the judgment on the scire facias, amounting to an affirm- *427 anee of the original judgment. The distinction is clearly stated by Serjeant Williams, in his note to Jaque v. Coxe, before referred to. It is this: “ If the first judgment be reversed, the second, which is founded on it, must necessarily be reversed; but the reversal of the last will not affect the first.” As, if a judgment in an action of debt is against executors, and after a scire facias against them, judgment is given against them, to have execution of their proper goods, and a writ of error is brought on both judgments, in that case, if the first judgment be good and the last erroneous, the last only shall be reversed, and the first shall stand. In Street v. Hopkins, Hardw. C. 145, by Lord Hardwicks, this is in the nature of a writ of error on two judgments; and therefore, if one of them be reversed and the other affirmed, a writ of error not being an action, but a commission to examine error, is to be applied to each particular case. Here the reversal was of the judgment on the scire facias; this neither molested nor affirmed the first judgment: it did not reach it; but left it as it found it. There was no error assigned on the first; the court only examined the error on the second, which had no relation to the first judgment.